NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

KATHLEEN CUNNINGHAM, et al.

        Plaintiffs,

v.

CITIGROUP, et al.

        Defendants.

CIVIL NO. 05-3476 (SRC)

**OPINION**

**CHESLER, District Judge**

      **THIS MATTER** comes before the Court on a Motion to Compel Arbitration, Dismiss Plaintiffs' Class Action Allegations, and Stay the Litigation by Defendants Citigroup, Inc. ("Citigroup") and CitiFinancial Services, Inc. ("CitiFinancial") (collectively, "Citi Defendants") (docket entry # 3) on two consolidated cases (civil action numbers 05-3476 & 05-3541).[1]  The Court, having considered the papers submitted by the parties, for the reasons set forth below, and

---

[1] This case was originally two separate cases that were consolidated into the current matter.  As a result, there was a single motion to compel arbitration, dismiss plaintiff's class action allegations, and stay the litigation filed by Defendants, with separate opposition briefs filed in each case and a single reply brief filed by Defendants on the consolidated case.  For reference purposes, the Defendant's consolidated brief to compel arbitration, dismiss plaintiff's class action allegations and stay the litigation will be cited as ("Def.'s Br.").  The opposition briefs of the parties on the pending motion will be cited as follows: the opposition brief in the Mount v. CitiFinancial Services, Inc. case, 05-3541, will be cited as ("Mount Br.") and the opposition brief in the Cunningham v. Citigroup, Inc. case, 05-3476, will be cited as ("Cunningham Br.").  Defendants' consolidated reply brief will be cited as ("Reply Br.").

for good cause shown, **GRANTS** Defendants' Motion and **STAYS** these judicial proceedings pending arbitration of Plaintiffs' claims in this matter.

## I.  BACKGROUND OF THE CASE

Plaintiffs in these two consolidated cases currently have or have had various types of loans and/or retail services accounts with Defendant Citigroup and/or Citigroup's wholly owned subsidiary, CitiFinancial.  As part of opening an account or taking a loan, Plaintiffs provided Citi Defendants with personal information such as their social security numbers, addresses, and phone numbers.  On or about June 4, 2005, Citi Defendants sent a letter to Plaintiffs, and others, informing them that computer tapes containing personal account and payment history information about their loans/accounts were lost while in the possession of a third party courier, Defendant United Parcel Service ("UPS").  (DeNittis Cert., Ex. A.)  Citi Defendants offered to pay for Plaintiffs' enrollment in a credit monitoring service for ninety days to guard against the risk of identity theft.  (Id.)

Plaintiffs filed suit in state court, and the case was removed to this Court on or about July 29, 2005.  Plaintiffs, on behalf of themselves and others similarly situated, have asserted a breach of contract claim, breach of express warranty claim, and a negligence claim against Citi Defendants.  Plaintiffs also seek to certify a class action on behalf of themselves and other similarly situated residents of the United States, whose personal information was also on the missing computer tapes.

Citi Defendants are moving for summary judgment to compel arbitration, dismiss the class action allegations, and stay the litigation on the basis that Plaintiffs' claims fall within the

scope of the Arbitration Agreement (the "Agreement"), a standard form agreement executed by Plaintiffs in conjunction with opening their accounts with Citi Defendants. Citi Defendants claim that these agreements expressly require Plaintiffs to submit their dispute to binding arbitration and prohibit Plaintiffs from participating in or asserting any claims against Citi Defendants by way of class action.

The terms of the Agreement provided that either party had "an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement." (DeNittis Cert., Ex. B.) The Agreement further provides that Plaintiffs "may not serve as a class representative or participate as a class member in a punitive class action against any party entitled to compel arbitration under this agreement." (Id.) Plaintiffs dispute the enforceability of the Agreement in the present case, arguing that the Agreement itself is unconscionable and unenforceable and that Plaintiffs' claims do not fall within the ambit of claims covered by the Agreement and its mandatory arbitration provisions.

Since the Agreement is a standard form that is widely used by Citi Defendants in their business dealings, this is not the first time the terms of the Agreement have been the subject of litigation. Arbitration agreements by Citi Defendants similar to the one at issue here have been upheld and enforced by numerous other courts. See, e.g., CitiFinancial, Inc. v. Newton, 359 F.Supp.2d 545 (S.D. Miss. 2005); CitiFinancial, Inc. v. Murray, 340 F.Supp.2d 743 (S.D. Miss. 2004); Egerton v. Citibank, N.A., 2004 U.S. Dist. LEXIS 6626 (C.D. Cal. Feb. 18, 2004); Monroe v. Citigroup, Inc., 2003 U.S. Dist. LEXIS 26316 (N.D. Fla. Aug. 5, 2003); CitiFinancial, Inc. v. Kelley, 2003 U.S. Dist. LEXIS 25161 (N.D. Miss. July 7, 2003); CitiFinancial, Inc. v. Richardson, 2000 U.S. Dist. LEXIS 21122 (N.D. Miss. Nov. 21, 2000). While Plaintiffs offer a

single case where a similar provision by Citi Defendants was struck down as unconscionable and unenforceable, see Lyte v. CitiFinancial Services, 810 A.2d 643 (Pa.Super. 2002), for the reasons stated below, we find the reasoning of this single case unpersuasive.

## II.  DISCUSSION

Motions to stay proceedings and to compel arbitration are reviewed under the summary judgment standard set forth in FED.R.CIV.P. 56(c).  See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d Cir.1980) ("Application of [the summary judgment] standard to [arbitration determinations] is appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."); Bellevue Drug Co. V. Advance PCS, 333 F.Supp.2d 318, 322 (E.D.Pa. 2004) ("[m]otions to compel arbitration are reviewed, in the first instance, under the well-settled summary judgment standard set forth in FED.R.CIV.P. 56(c)"); E-Time System, Inc. v. Voicestream Wireless Corp., 2002 WL 1917967 at *4 (E.D.Pa. Aug. 19, 2002) ("When confronted with a motion to stay proceedings pursuant to 9 U.S.C. § 3, the appropriate standard of review for the district court is that employed in evaluating motions for summary judgment under FED.R.CIV.P. 56(c).") (citing Par-Knit, 636 F.2d at 54 n. 9). Consistent with this standard, a party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all

reasonable inferences in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).  Consistent with this standard, the Court will review each of the Defendant's arguments in turn.

**A.    The Agreement Entered Into Between Plaintiffs and Citi Defendants is Not Unconscionable**

The Federal Arbitration Act (FAA) applies to all arbitration agreements involving interstate commerce, including the Agreement at issue in this case.  See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 55-56 (2003).  "The effect of the [FAA] is to create a body of federal

substantive law of arbitrability, applicable to any agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  While federal policy favors arbitration agreements, the enforceability of these agreements is examined by applying the "ordinary state-law principles that govern the formation of contracts."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  See also Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) ("A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA.").  "Applying the relevant state contract law, a court may . . . hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'"  Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004) (quoting Alexander v. Anthony Intern., L.P., 341 F.3d 256, 264 (3d Cir. 2003)).

      Under New Jersey law, unconscionability is described as "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms."  Howard v. Diolosa, 241 N.J.Super. 222, 230 (App.Div. 1990).  A party alleging unconscionability has the burden of proof and it is an issue of law for the court's determination. Gladden v. Cadillac Motor Car Div., General Motors Corp., 83 N.J. 320, 327 (1980).

      While New Jersey law recognizes both procedural and substantive unconscionability, Plaintiffs are not claiming that the Agreement is procedurally unconscionable.  Plaintiffs claim that the Agreement is substantively unconscionable on the grounds that, under the Agreement's terms: (1) they are exposed to undue expense in challenging the Citi Defendants' business practices; (2) the Agreement lacks mutuality because certain claims are excluded in favor of the

6

Citi Defendants; and (3) the anti-class action provisions is inconsistent with public policy favoring such actions to protect common law rights of consumers.

1. ***The Agreement Does Not Unconscionably Impose Undue Arbitration Costs on Plaintiffs***

An arbitration clause which requires a claimant to "bear[] prohibitive costs" can be invalidated as unconscionable.  Blair, 283 F.3d at 609.  Under the Agreement, Citi Defendants agree to "pay the amount of the filing fee in excess of the amount of the fee that would be required for You [(Plaintiffs)] to file a lawsuit in Your [(Plaintiffs')] jurisdiction" and "pay to the Administrator all other administrative costs of the arbitration proceeding."  (DeNittis Cert. Ex. A.)  The Agreement also includes a provision that the arbitrator may award Citi Defendants "the excess amount of any such filing fee and any other arbitration administrative costs We [(Citi Defendants)] incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your [(Plaintiffs')] part."  (Id.)

Plaintiffs first challenge these terms on the grounds that, while the Agreement obliges Citi Defendants to pay "the costs of the arbitration proceeding over and above what the claimant would pay if in court, it is silent as to the costs of appeal."  (Mount Br. at 17.)  Citi Defendants concede in their filings with this Court, however, that the terms of the Agreement oblige them to pay <u>all</u> costs, including any arbitration appeal costs, because any such appeal is part of the arbitration proceeding.  (Reply Br. at 17.)  This renders the Plaintiffs' concerns regarding the costs of arbitration appeals moot in demonstrating unconscionability of the Agreement's terms.

Plaintiffs also challenge the provisions of the Agreement giving the arbitrator the power to award Citi Defendants arbitration costs in the event that Plaintiffs' claim is deemed to be

7

brought in bad faith or without justification, calling this an unfair "loser-pays" provision. (Mount Br. at 16.)  Plaintiffs, in their papers, detail the administrative and arbitrator fees for arbitration in the New York/New Jersey area, noting that such fees are "substantial" and present a "considerable financial risk[]" to a claimant seeking to challenge Citi Defendants under the terms of the Agreement.  (Mount Br. at 17-18.)  While the Supreme Court has noted that large arbitration costs could unconscionably preclude a claimant from effectively vindicating their rights in arbitration, the "'risk' that [they] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Green Tree Financial Corp. - Alabama v. Randolph, 531 U.S. 79, 90-91 (2000).

Under the provisions of the Agreement, the only expense that Plaintiffs will absolutely incur is the costs of the arbitration filing fees, capped at the amount they would have to pay to file a lawsuit in their local jurisdiction. (DeNittis Cert. Ex. A.)  Plaintiffs have not made a showing that they will, under the terms of the Agreement, incur any excessive arbitration fees.  Their claim is based solely on the proposition that they may be required to bear such fees under the Agreement's terms.  The mere possibility that an arbitrator may require Plaintiffs to bear excessive fees is not sufficient to invalidate an otherwise valid arbitration agreement. Blair, 283 F.3d at 607 (citing Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999)), Cuie v. Nordstrom, Inc., 2005 WL 2922017, *8 (E.D.Pa. November 3, 2005).  The fact that these fees may be imposed only upon a finding that Plaintiffs' case has been brought in bad faith or without any justification further weighs in favor of a finding that such provisions do not render the Agreement or its terms unconscionable.

Plaintiffs' argument that these provisions render the Agreement unconscionable because

8

they are not reciprocal is similarly unpersuasive. Under the Agreement's terms, Citi Defendants have agreed to pay the filing fees and administrative costs of arbitration (above the costs of the court filing fee). There is, therefore, no need for a reciprocal provision to allow the Plaintiffs to recover arbitration fees from Citi Defendants in the event that an arbitration claim by Citi Defendants is brought in bad faith or without justification since, in such a case, Citi Defendants would be the party bearing these costs by default under the terms of the Agreement. Accordingly, the provisions of the Agreement which govern the allocation of arbitration costs among the parties does not render the Agreement substantively unconscionable.

> 2. *The Agreement Does Not Unconscionably Exclude Specific Types of Claims From Arbitration*

The Agreement specifically excludes two types of cases from its arbitration provisions. First, the Agreement excludes any action needed to obtain a judicial order for the purpose of effecting a foreclosure or establishing, perfecting, or clearing title with respect to interests in real property from the arbitration process.[2] (Carter Cert., Ex. B & D.) Second, the Agreement excludes claims where a party is seeking monetary relief less than $15,000, leaving these claims to be litigated in small claims courts.[3] (Id.) Plaintiffs claim that these provisions render the

---

[2] The relevant clause in the Agreement excludes from the arbitration provisions:
Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
(Carter Cert., Ex. B & D.)

[3] The Agreement also excludes from its arbitration provisions:
Any claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000 or less in total relief, including, but not

9

Case 3:05-cv-03476-SRC-JJH   Document 12   Filed 12/16/05   Page 10 of 15 PageID: 159

Agreement "excessively one-sided in that it has the effect of forcing all claims brought by borrowers into arbitration, while allowing [Citi Defendants] to utilize the court system to enforce its rights." (Mount Br. at 20.)

While Plaintiffs characterize the provision that allows Citi Defendants to use the court system, rather than arbitration, to enforce a foreclosure action as preserving "the one remedy" that Citi Defendants are "most likely to employ" against Plaintiffs (id. at 21), the loans at issue in this case are unsecured by any security interest in property (see Carter Cert., Ex A & C, Reply Br. at 19 n. 6) and not subject to any foreclosure proceedings by Citi Defendants. Additionally, because the right to pursue a foreclosure action can only be done through the court system, such a provision is more a practical recognition of the limitations of the arbital forum rather than an unconscionable provision.

Plaintiffs' argument, furthermore, presumes that arbitration is somehow less desirable or a substandard forum for their claims than bringing these claims in the court system. Given the liberal federal policy favoring arbitration, and the rejection of "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would be complainants,'" there is no basis for this presumption that would

---

    limited to compensatory, statutory, and punitive damages, restitution, rescission, disgorgement, costs, and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as the matter remains in such court and advances only an individual, non-class Claim. Any claims asserted on behalf of a putative class of persons will, for the purposes of this exclusion, be deemed to exceed $15,000. In the event that any party fails to specify the amount being sought for relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000, unless the matter remains in and subject to the jurisdiction of the small claims court.

(Id.)

make such a provision facially unconscionable. Green Tree Financial, 531 U.S. 89-90 (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481 (1989))

The second provision, which excludes claims less than $15,000 from the mandatory arbitration procedures, applies equally to both parties. The terms of the Agreement give both parties equal access to the courts for such claims. It is worth noting that the Agreement's terms effectively oblige Citi Defendants to pay most of the costs of arbitration for claims brought under the Agreement's arbitration provisions. Given these terms which place the arbitration costs almost exclusively upon Citi Defendants, the provision excluding smaller claims, under $15,000, from the mandatory arbitration process--leaving these claims in small claims courts where each party pays their own fees--appears neither unreasonable nor unconscionable.

### 3.   *The Anti-Class Action Provisions of the Agreement do not Render the Agreement Unconscionable*

The Agreement expressly prohibits Plaintiffs from bringing class actions or from participating as a class member in a class action suit against Citi Defendants.[4] Plaintiffs argue that this provision renders the Agreement "unconscionable because it is inconsistent with and contrary to well-settled public policy favoring class actions to protect the common law rights of consumers." (Cunningham Br. at 17.) Plaintiffs claim that, by denying them the ability to bring

---

[4] The relevant clause in the Agreement states:
You [(Plaintiffs)] agree that any arbitration proceeding will consider only Your [(Plaintiffs')] Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your [(Plaintiffs')] or Our [(Citi Defendants')] Claims. Because You [(Plaintiffs)] have agreed to arbitrate all Claims, You [(Plaintiffs)] may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this agreement.
(DeNittis Cert., Ex. B.)

class action suits, the Agreement "will effectively extinguish the[ir] causes of action." (Id. at 22.)

Such anti-class action provisions have not been found to be per se contrary to public policy under New Jersey state law. See, e.g., Muhammad v. County Bank of Rehoboth Beach, 379 N.J.Super. 222, 246 (App. Div. 2005) (holding preclusion of class action suits does not render agreement unconscionable); Gras v. Associates First Capital Corp., 346 N.J.Super. 42, 56 (App. Div. 2001) (finding arbitration agreement that prohibits class action suits enforceable). Plaintiffs here have also not argued that the provisions barring class action suits in the Agreement were not clear or explicit nor have they provided any other justification for finding the provision unconscionable other than the fact that they prohibit Plaintiffs from bringing class action suits against Citi Defendants.

Plaintiffs' argument seems to rely on the notion that, absent a class action, the individual claimants here would lack the incentive to bring suit against Citi Defendants since the potential recovery for an individual claimant is relatively small. (See Cunningham Br. at 19.) Compelling arbitration for such small claims, Plaintiffs argue, "undermines the fairness and efficiency of our justice system" by offering the claimants "little or no compensation" and ignoring "the deterrent function of tort law." (Id. at 21-22.) This argument, however, seems to ignore the provisions of the Agreement itself. If, as Plaintiffs allege, the individual suits by the claimants are relatively small, they would likely fall under the Agreement's provisions that places suits for under $15,000 outside the mandatory arbitration provisions, leaving these suits in a venue more appropriate for such small claims, namely small claims court.

Additionally, as the Third Circuit noted, there is no reason to conclude, as Plaintiffs'

argument seems to imply, that the recovery available to individual claimants are "automatically increased by use of the class forum." Johnson v. West Suburban Bank, 225 F.3d 366, 374 (3d Cir. 2000). Plaintiffs here are left, under the terms of the Agreement, with a viable means to pursue their claims against Citi Defendants in small claims court. Upholding the contractual waiver of Plaintiffs' right to seek class action remedies in the Agreement does not, therefore, pose an unconscionable bar to their right to seek appropriate redress from Citi Defendants.

### B.     Plaintiffs' Dispute Falls Within the Scope of the Arbitration Agreement

Prior to ordering arbitration, a court must determine whether or not the specific dispute falls within the scope of the arbitration agreement. AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986); Paine Webber v. Hartmann, 921 F.2d 507, 510 (3d Cir. 1990). Plaintiffs argue that the current claim is outside the scope of the arbitration agreement, since this dispute is not directly related to any loan transaction entered into between Plaintiffs and Citi Defendants. (Cunningham Br. at 8.) The question of whether a dispute falls within the scope of the parties' arbitration agreement is one for the court, not an arbitrator, to determine. See AT&T Techs., 475 U.S. at 649; Paine Webber, 921 F.2d at 510. In support of their motion for summary judgment, Citi Defendants have submitted copies of the Agreement, signed by Plaintiffs, which contains the relevant arbitration terms. In reviewing this Agreement, the Court is satisfied that its arbitration terms are unambiguous, broad enough to cover all of Plaintiffs' claims, and susceptible to only one interpretation: that the parties agreed to settle, through arbitration, all the claims raised by Plaintiffs against Citi Defendants.

It is not contested that the parties in this case executed valid contracts that contain express

13

and clearly marked arbitration clauses.  (See Carter Cert. Ex. A-D; DeNittis Cert. Ex. A-B.)  The question for this Court is whether Plaintiffs' current claims for breach of contract, breach of express warranty, negligence, invasion of privacy, and breach of duty of confidentiality against Citi Defendants fall within the scope of claims defined by the Agreement.  The Agreement expressly defines the types of claims that are covered by its mandatory arbitration provisions, including "any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You [(Plaintiffs)] and Us [(Citi Defendants)]."  (DeNittis Cert. Ex. A.)  This definition includes, "without limitation, anything related to . . . [a]ny documents or instruments that contain information about any Credit Transaction, insurance, service, or product [as well as] [a]ny act or omission by any of Us [(Citi Defendants)]."  (Id.)

       The current dispute arises from alleged acts of negligence in relation to Citi Defendants' handling and safeguarding of confidential information received from Plaintiffs as part of their loan transaction.  This information was acquired and transported by Citi Defendants as part of the issuance and servicing of the loans extended to Plaintiffs which are the source of the Agreement and its terms.  The missing computer tapes are an "instrument[] that contain[s] information" about the credit transaction between the parties, which is specifically included within the definition of a claim under the Agreement.  (Id.)  Any negligence in handling or safeguarding of these tapes would constitute an "act or omission" of Citi Defendants that is clearly related to this loan transaction.  (Id.)  All of the Plaintiffs' claims in this case, therefore, fall squarely within the plain language that defines the scope of the Agreement and are subject to arbitration under its terms.

### III.  CONCLUSION

For the reasons stated above, and for good cause shown, the Court grants Defendant's Motion for Summary Judgment.  An appropriate form of order will be filed herewith.


Date:   December 16, 2005

                                              s/Stanley R. Chesler
                                              Stanley R. Chesler, U.S.D.J.